By the Chancellor.
Tills is understood to be an application for an injunction upon the ground, that no rent was due at the time of the distress.. I £ this was the fact, it was a proper case for relief at law; but the plaintiffs, instead of availing themselves of relief there, have ,come here for it, after availing themselyes of the delay of the law by giving a replevin bond; but this Court cannot interpose under such circumstances; and let it be recollected, that where a party has relief at law, he must avail himself of it, by making a proper defence ; if he does not, he closes the door of equity against -himself, unless he can shew, from some peculiar *493 circumstances, which must be true, and not within his conrrol, that he could not avail himself at law; for otherwise every case may be liable to be brought into this Court.
Motion denied ;
And afterwards, in the June term, renewed, upon a supplemental bill stating, that the plaintiffs were governed in their conduct by their counsel, and of which, be gave a certificate,
“ that a Court of Chancery would afford relief notwithstanding the replevy bond.”

By the Chancellor.

The rule as laid down in this case,, when this motion was first made, has been reconsidered and approved; and now let me again test this application, by that rule, namely, “ that unless the plaintiffs can shew from some peculiar circumstances which must be true, and not rvithin their control, that they could not be relieved at law, they shall not be allowed to come into this Court; for otherwise, every case may be liable to be brought in as for example: suppose one who never had the small-pox was sued at law in one of the common law Courts of this place, and on his way hither to make his defence, he should hear that that complaint was in town ; and from a fear of taking it he should return, and a judgment was to go against him, this Court should, under such circumstances, upon the usual proof, grant an injunction ; but if upon the coining in of the answer, the facts were denied and not proved, the injunction should be dissolved; and so in a case where an injunction should be obtained, and upon filing the answer, it should appear, that the circumstances under which it was obtained, might have been controlled, it should likewise be dissolved, and the party left to the consequences of the law; because in either case, his application was made with unclean hands, against one of the plainest principles of the Court, namely, that relief shall never be afforded but to those who come without blame in themselves; but where the circumstances under which relief could not be *494 obtained at law, are true, and cannot be controlled, there relief in equity should be afforded; but in this case, thouSh *-^e circumstances stated in the supplemental bill be true, it was within the control of the plaintiffs, for they might . r ’ J ° have had better advice from their counsel, if he had given himself the trouble to examine the subject upon principle ; for I hold it to be a very clear case, that the errors of a competent tribunal at law, which can or might have been corrected there, affords no ground for relief in equity ; but they must be corrected by a Superior Court in the mode pointed out by law. 1 Call, 546. Terrell v. Dick; 2 Hen. &? Munf. 139. Turpin v. Thomas, are authorities completely up to this point; much less then, can the errors of counsel furnish .ground for relief in equity; for surely the party who takes advice must abide the consequences of it. This may be thought a strict rule, but it is a just one, and it will be found in practice as beneficial as economical, since it will make parties attend in the first instance, to their rights at law, where the witnesses generally must be in person, and can be seen at the same time that they are cross-examined, and heard, which is one of the best means by which the truth can be attained; but in this Court the mode of proof is different; the testimony is upon paper; a mode much more liable to abuse than the former, and therefore it should not be resort-eel to but where relief cannot be obtained by means of the law: by a strict adherence to this course, the ancient trial by jury, which is preferable to all others, will be preserved; and the saving to suitors on account of costs, will be immense ; for it is a fact, that I have dissolved at least one hundred injunctions which had been granted by my pi*edecessor, without having been asked, in a single instance, (as well as I recollect,) upon what ground: and it is equally true, that notwithstanding the strictness which I have observed, in granting injunctions, that not one in ten stands the test upon a motion to dissolve: for these reasons 1 must adhere to the most rigid rules of the Court; and with me there remains not a doubt but that the whole country will find their interests supported by it.
*495 But upon the merits, the plaintiffs should not be relieved; and why? because the equity now setup, existed before they gave their bond for the rent, payable to the defendants in three months. The plaintiffs then, and not the defendants, A Hancock and Gilhat\ should be turned over to Soss^ as they may have discharged him, relying upon the plaintiffs, in consequence of their conduct, m fcrst asking indulgence, and then giving their bond for the rent.
I do not mean to say any thing to affect the general rule, that an assignee cannot be in a better situation than the assignor, as to the obligor's equity; unless by the act of the obligor himself, as in the case of Hoomes, Executor of Elliot, v. Smock, 1 Wash. 389. and so in the case before me, Ross could not place the defendants, Hancock and Gilliat, in a better situation than he himself occupied, but the plaintiffs might, and so they did, by giving their bond to those defendants. To illustrate this by example, let it be stated, that A. transfers his claim on B. to C. and upon application B. executes his bond to C. who thereupon discharges A. and after-wards C. obtains a judgment against B. upon this bond, who applies for relief to a Court of Chancery upon some ground of latent equity between him and A.; B. should certainly be turned over to A., and not allowed relief against C. This i» a like case with the one before the Court.
Motion again denied.
Mr. Hay then said, that he had been employed in this case, and should have been glad to have made some remarks before the Court had decided, if he had been apprized of the Court’s intention.
The Chancellor said he might be heard on the first motion day; and the counsel who made the motion said, he would, with the leave of the Court, avail himself of the indulgence granted to Mr. Hay to put into the Chancellor’s hands some notes, which the Court said he might do.
*496 Mr. Hay was fully heard, and the other counsel filed his notes.

Curia advisare vult.

By the Chancellor.

Mr. Hay, in taking a general view of this case, said, “ that it was not universally true, that where relief could be had at law, it should not be had in equity ; as for example, in waste, in dower, and in the case of a nuisance, relief may be had in chancery, though it may also be had at law; that a matter of discount was not a matter of original jurisdiction at law; and that it never had been decided that one who had a discount, should not have it inequity, unless he had failed at law; but he admitted, that if the rent had been actually paid to Ross, the plaintiffs might have been relieved at law, in a writ of replevin, but that they could not in the present case, as the payment was on account of other matters, for the statute concerning discounts did not embrace the case of a tenant or plaintiff in replevin, and that a Court of Equity should not be so strict in confining a party to relief at law, in a writ of replevin, as in other actions, because, if he should be cast, he would have to pay double the amount of the rent in arrearand according to the fashion of the times, Mr. Hay referred the Court to several English authorities, and to a few home decisions. But as his whole argument went to prove that the plain tiffs could not have been relieved by a writ of replevin, as evidence of the discount, in that kind of action, would have been improper, I shall confine myself to the examination of this point principally.
The whole case then, is reduced to this question; could the plaintiffs, in a writ of replevin, have given evidence of the advancement of money to Ross, while they were his tenants, which overpaid the rent that was due to him, before he sold the leasehold premises to the defendants? If the plaintiffs could have given such evidence at law, they cannot, upon Mr. Hay’s own principles, be admitted now to come into equity, unless they bring themselves within, the rule as *497 laid down. To illustrate this point by example : Í will suppose, that the defendants Hancock and Gilliat had, instead of the distress which they made for the rent, brought an action of debt, as the assignees of Ross, might the plaintiffs not, in this action have proved their discounts against him, before notice of the assignment, and must they not have been allowed agreeably to the statute in the edition of the laws by Pleas, and Pace, p. 36. s. 4. ? The answer, I apprehend, is too clear in the affirmative to be questioned. I ask then if their rights can be changed, because of a different form of action ? and the answer is, to my mind, equally clear that they cannot: for I take the law to be, that the plaintiff in replevin, and the defendant in all other actions, may plead as many several matters, whether of law or fact, as he shall think necessary for his defence. Ib. p. 80. s. 40. I have referred to this statute to prove, that the plaintiff ira replevin, may do what a defendant in all other actions may : in other words, that their rights are the same, without regard to the form of the action: and by another statute, in what is called the old body of laws, p. 249. and in the 2d vol. by Pleas. 119. s. 1. the defendant, upon the trial, of any suit, shall be at liberty to make all the discounts he can, and upon proof thereof, the same shall be allowed in court. But it was said, that this statute did not embrace the case of a tenant or plaintiff in repletan ; but surely the equity of the statute does : but if it does not, may the defendants Hancock and Gilliat, not be considered as the grantors of the rent that was due to Ross, by the plaintiffs, at the time of the purchase of the defendants, Hancock and Gilliat, from Ross of the leasehold premises ? and if so, by another statute, Plea, and Pace's edition, p. 156. s. 11. no tenant who, before notice of the grant, shall have paid the rent to the grantor, shall suffer any damage thereby : if this statute be applicable to the present case, as I apprehend it is, it would seem to be very clear, that if the plaintiffs had made advancements to Ross, before he sold the leasehold premises, and granted the rents thereof to the defendants *498 Hancoc': and Gilliat, that the plaintiffs should not suffer any damage thereby, whether those advancements were made on account of the rent, or any other account: as Ross could . not place Hancock and Gilliat in a better situation than he ^ himself stood s for I hold it to be very clear, that in a writ of replevin between Ross and the plaintiffs, evidence might have been given of the discounts ; and of course that they might have been proved in a writ of replevin, between the plaintiffs and Hancock and Gilliat, as Ross’s grantors, or assignees.
This is a. short view of the case before me, as presented under our own statutes, and I think that they very clearly warrant the construction which I have given to them ; bat it was said by Mr. Hay in his argument, that as in England, it had been held, that the statutes of set-off did not extend to a replevin, the same rules should obtain here : but I think otherwise; because I disapprove of the reason given for it there, namely, that a replevin is not an action, but a remedy without suit, and like an action for a tort. BulL N. P. 181. and Montag. on Set-Off, 18. And Mr. Kenyon, the Chief Justice said, that it was much to be lamented, that it had been so decided; but that such was the law; and in this, were I a Judge in his country, I might concur with him; hut ás I am not, I shall lay down a differ» cut rule here; and again, our statutes of set-off are not like those in England; for there the statutes .of set-off speak of mutual debts, which was the common law principle: buthere, a defendant in any suit is allowed to make all the discounts 'he can, and upon proof thereof shall be allowed them in Court; by which, most clearly, the legislature meant to extend the common law rule ; and I have before said, that a plaintiff in replevin has the same rights, as a defendant in all other actions has : and in support of which ■ I must beg leave to draw to my aid the case of Turberville v. Self, 2 Wash. 71. where the Court of Appeals must have given the same construction to our statutes, or in that case the Court could not have affirmed the judgment of the District Court of Westmoreland, which had allowed Self the plaintiff in re_ plevin, to give in evidence an award of the arbitrators made *499 after the distress, but respecting accounts which sun; ¡ted between the parties before, to shew that he did not ow<. any part of the rent to Turberville: upon the whole, I have no doubt, but that under our statutes, discounts in replevin may be proved, in order to shew that the avowant distrained too much rent; and' therefore it devolves upon the plaintiffs to bring themselves within the rule as laid down, or to stand bound by their own act: for certainly there is no principle better settled than this, that discounts should not be first set up in equity without some sufficient reason.
As to relief in equity, in waste, in dower, and in the case of a nuisance, though it may also be had at law, this is true as a general proposition; but it is not true, even in those eases, where there is no impediment at law ; for wherever that is the case, this Court should not interfere. As to the severity of the law, I have nothing to say, except, ¡hat I cannot lend my aid to assist a party to avoid the couse* quences of a statute, unless he brings himself within the rule as before laid down: if the statute is hard and unjust, the Legislature should change it; but this Court should not.
The notes of the other counsel are next in order; and so far as he has taken a different view of the subject from Mr; May, they will be stated and considered.
He said, “ that if A. was sued on a bond, and negligently suffered a judgment to go against him by default, when he might have defended himself, and proved payment of the debt; yet that this Court would relieve him; that his clients were blameless, and that if he was in an error, he was partly brought into it by the Court of Appeals, in the case of White, Whittle & Co. v. Bannister’s Executors, 1 Wash. 156. where it never was doubted but that a Court of Equity would give relief, notwithstanding the party complaining might have resorted to a writ of replevin; that he had practised law for twenty-three years and upwards, and in all that time he had never known but one writ of replevin prosecuted ; and that at least twenty cases like the present had bee» entertained in the Courts of Equity j that the writ of *500 replevin was nearly as obsolete as the audita querela ; that as Courts of Law would allow of suits for money paid by mistake, a Court of Equity, if one had given his bond for money under like circumstances, would relieve against a judgment thereuponand he closed his remarks, by complaining of the animadversions of the Court upon the conduct of his clients.
.. As to A.’s case, I repeat again, that this Court could not relieve in such a case without violating every legitimate principle of the Court, unless the application was made within the rule as laid down.
The misapprehension as to the case of White, Whittle & Co. v. Bannister’s Executors, proves how dangerous it would be to the common law jurisdiction of this country, to open the, door of this Court to protect our citizens against the mistakes of counsel, and, more especially, when we consider what a number of inexperienced young gentlemen are daily turning out in the profession of the law. I have very attentively examined this case for the principle said to have been decided in it, and I cannot find even the word replevin in any part of it, which shews that the question, as to jurisdiction, was not made ; and certainly there is no principle better known than this, that a question not made in the decision of a case is never considered as settled by it. But the case itself is totally unlike the present; for the appellees in that case were executors, and had distrained for rent upon a lease made by themselves-upon the authority of their testator’s will, and the discount offered was a debt due by their testator, and if it had been allowed, it might have subjected them to a devastavit; and, therefore, upon every principle, the appellants could not be relieved but in a Court of Equity, as their relief depended upon the amount of the assets, ah amount of which was directed, although the injunction was dissolved.
Although the counsel has practised law for twenty-three years and upwards, and has not in all that time known but one writ of replevin to be prosecuted; yet, this only proves, that from his great attention to his profession in other re *501 spects, he has not taken time to read with attention the reports of our own Courts; and therefore 1 wili, with his permission, refer him to another case in 2 Wash. 71. and two others in 1 Call, 117. and 405. which have come to the Court of Appeals; and how many others, that have not been brought up to that Court, I cannot say. It is true, that such an action is not very common, but this is no ob» jection to the legality of it; for it is expressly authorized by the Legislature, and forms a part of one of our most prominent statutes, in the edition of the laws by Plea, and Pace„ p. 153. and should be resorted to upon all proper occasions; first, because it is the law; and, secondly, because the trial must he by a jury.
As to the number of cases like the present, which may have been entertained in equity, it may be well accounted for by all those who will give themselves the trouble to examine the course of our judicial proceedings from the time of the decision of the case of Barret v. Floyd, in the year 1790, until the decision of the case of Terrel v. Dish in 1799 ; but this case, and another which followed of Turpin v. Thomas, in 1808, most clearly overruled the case of Bar ret v. Floyd, as well as all those determined, in the mean time, upon like principles; and again settled the line of demarcation between the Courts of Law and Equity, upon very correct principles; and I pledge myself to be among the last to refuse my aid to support it.
Surely the counsel was not serious when he remarked that the writ of replevin was as nearly obsolete as the audita querela; for the former is not only prescribed as a legal remedy by a very recent act of the legislature, and is fre - quently put in practice ; but the latter, even in England, has long since given way to a summary mode of relief upon motion, and there, as Judge Blackstone says, is quite driven out of practice ; and I think I may venture to say, that it never was introduced into this country.
It is certainly true that a Court of Law will entertain a suit for money paid by mistake; and that a Court of Equitj? *502 will relieve against judgment obtained upon a bond, given for money, under like circumstances, and for this plain rea* son, that at law you cannot go into the consideration of the bond, and therefore it is a good ground for relief in equity; but this is not the plaintiffs’ case, for they knew what they were about.
Upon this view of the subject, these general rules pre* sent themselves as proper for the government of a Court of Equity.
Í. That in all cases where a remedy may be had at law, relief shall not be had in equity, unless there he some impediment at law; and,
2. That in all cases where relief can be had at law, it shall not be had in equity, unless the case falls within the rule as before laid down; and which has been the standing course of the Court ever since I have had the honour of a seat on the bench.
And I entreat the gentlemen of the bar to take notice, that these general rules, as now again repeated, pannot be departed from, but must be steadily regarded by the court.
Motion finally denied.