Parker, J.
I am aware that Jacob Dull, the surviving partner of the intestate, had a right to the custody of the partnership effects, for the purpose of paying the debts and settling the concern ; and if he had exercised the right, and none of these effects had actually come to the hands of the administrator of the deceased partner, he could not have been charged, without gross negligence in having the partnership affairs adjusted, and the balance ascertained and paid over to him. But here, by an agreement with the surviving partner, he took possession of the partnership effects and sold them, and was to pay the partnership debts and divide the balance. This sale was made in September 1824, and the present suit was instituted in 1829, after he had had ample time allowed him to pay the debts, if any, and to administer the moiety coming to him, according to the tenor of his official bond. These effects were, in fact, legal assets in his hands, subject only to a charge which it was incumbent on him to establish. He was not merely Jacob Dull’s agent in this arrangement; for he was a tenant in common with him, having a community of interest, and, as such, entitled to hold the partnership effects, if he happened to be in possession of them, until required for payment of debts, or for distribution by a court of equity. They might have been taken under execution by a creditor of his intestate, and the court of law would not have taken notice of the equitable rights arising out of the partnership, but have left them to a court of equity. Ram on Assets 317. *437 Law Library, vol. 8. p. 209. 210. 2 Wms. on Executors 1022. That is to say, Jacob Dull could only in equity have recovered a moiety after the partnership debts were paid; and in the mean time they would have been treated as legal assets. That this moiety should have been accounted for in 1835, when this suit was tried, appears to me to be reasonable, from other considerations. The administrator having undertaken to sell the partnership effects and pay the debts, it was his duty to use reasonable diligence in the execution of that trust. If they had remained in the hands of the surviving partner from 1824 to 1835, the administrator having unduly delayed to bring him to a settlement and to collect his intestate’s share, he would be liable to creditors for any amount they could establish by probable evidence. A fortiori he is liable, when he has the assets in his own possession, and has taken no steps to ascertain his intestate’s share. His conduct was a breach of his official bond, and the only question before the jury would be as to the amount of the damages. They had the materials before them for settling the account, furnished by the administrator himself, who by his own statement had paid but 200 dollars of partnership debts, whereas the sale amounted to 408 dollars 76 cents, which, after paying Jacob Dull one moiety, left more than enough to pay the debt for which suit was brought. After the lapse of 11 years, the jury had a right to presume there were no other partnership debts; and if the result of Jacob DulVs suit against the defendant, brought in 1831, seven years after the trust commenced, should shew the contrary, and charge him farther, it would be a loss brought about by his own gross negligence, which ought not to affect the creditors of his intestate. If, after eleven years laches, they are not entitled to have his account settled by a jury, and the balance considered as assets in his hands, how long must they wait ? Must it be until the suit is decided between him and the surviving partner, which *438 may, for any thing that we know, be depending many years, and which we have a right to presume was rendered necessary by his own laches in not rendering an account to Jacob Dull from 1824 to 1831 ? I think not. I am therefore of opinion that the judgment of the circuit court should be reversed, and that of the county court affirmed. But I submit these impressions with much diffidence, since they differ from those of my brethren, who think the judgment of the circuit court ought to be affirmed.
Tucker, P.
The question in this case is, whether there was sufficient evidence of assets before the jury. The only assets pretended consisted of the interest in the social effects of a partnership concern between the decedent and his brother. Now, although it is true that upon the death of one partner, his administrator is tenant in common of the property in possession with the surviving partner (Gow on Partn. 376. Montague on Partn; 136. 2 Chitty’s Black. 399. in note. Co. Litt. 182a.) it is not less true that the social effects cannot be applied to the discharge of the individual debts, until all the social debts have been discharged. Montague 99. Gow 157. Id. 223-228. Ex parte Ruffer, 6. Yes. 126. Ex parte Williams, 11 Ves. 5. And though an execution against an individual partner may be levied on his interest in the tangible property of the firm, yet I have no doubt that Gow has truly stated the law to be, that an injunction would, on a proper case, be allowed in equity to stay proceedings under the execution, until the proper accounts are taken, and it is ascertained what interest the debtor has in the partnership stock; and if he has none, the injunction will be made perpetual. For, “ in case of dissolution,” says lord Eldon (in Crawshay v. Maule, 1 Swanst. 506.) “ nd person in possession of the property can make any use of it inconsistent with the purpose of winding up the affairs of the concern.”
*439 In this case, then, until it is shewn by a settlement of the partnership accounts, that there is a surplus after winding up the concern, and what that surplus is, it cannot appear that any part of the social effects is assets of the deceased partner’s estate. Now, if the surviving partner had taken possession of the effects, as he well' might, for the purpose of winding up the concern and paying the debts, it is palpable that until the accounts were settled, and he paid over the balance to the administrator, that balance, if any, would not have been assets. And even admitting that where an executor has grossly delayed the recovery of the decedent’s choses in action, he may be made responsible for them as if received, I do not think the mere lapse of time in this case would justify such a measure, when it appears that a suit is depending for the settlement of the partnership concerns, and there is no evidence that it has been unnecessarily delayed, but a presumption to the contrary, as the surviving partner, and not the administrator, is the complainant.
Nor do I think the fact of the winding up of the concern being intrusted to the administrator, makes a difference. He is bound, in faith of his agreement, as well as in law, not to misapply the funds, and to account fairly with the surviving partner. He alleges thal he has paid 200 dollars, and doubtless contends that there is 200 dollars surplus; and if so, the relator will at some future time get his money. But it would seem, the surviving partner is still asserting a claim against the administrator. If he should shew that besides the 200 dollars Peck has paid, he himself has paid other 200 dollars, then he is entitled to the whole amount in Peck’s hands. The jury ought not, in the dark, to have decided this matter, nor was it competent for them, or the court, to settle accounts between Peck and the surviving partner, in this suit between the justices and Peck, since their opinion of the matter would be no *440 protection to him against paying the money over again ', . . to the surviving partner.
I am of opinion, therefore, that the judgment of the county court refusing a new trial was rightly reversed, and that the judgment of reversal must be affirmed.